## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Jeremy T. S.,                                        Case No. 23-cv-202 (TNL)

        Plaintiff,

v.                                                                    **ORDER**

Martin J. O'Malley[1],
Commissioner of Social Security
Administration,

        Defendant.

---

Christopher Todd Milliman, Olinsky Law Group, 250 South Clinton Street, Suite 210, Syracuse, NY 13202 and Asha Sharma, Disability Partners, PLLC, 2579 Hamline Avenue North, Suite C, Roseville, MN 55113 (for Plaintiff); and

Ana H. Voss, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; James D. Sides, Social Security Administration, Office of the General Counsel, Office of Program Litigation, Office 4, 6401 Security Boulevard, Baltimore, MD 21235; and Kizuwanda Curtis, Social Security Administration, Office of Program Litigation, 6401 Security Boulevard, Baltimore, MD 21235 (for Defendant).

---

## I.    INTRODUCTION

Plaintiff Jeremy T. S. challenges Defendant Commissioner of Social Security's denial of his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the same, 42 U.S.C. § 1381 *et seq.* The parties have consented to a final

---

[1] Martin O'Malley is currently serving as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as Defendant in this suit. *See* Fed. R. Civ. P. 25(d).

judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

Pursuant to the Federal Rules of Civil Procedure's Supplemental Rules governing actions seeking judicial review of the Commissioner's decision, this action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Rather than filing a brief as provided in amended Rule 5, Plaintiff filed a Motion for Summary Judgment, ECF No. 16, which was the procedure prior to the recent amendment to Rule 5. Defendant filed a brief requesting for the Commissioner's decision be affirmed, ECF No. 20.

For the reasons set forth below, the Court denies Plaintiff's motion, grants Defendant's request for relief, and affirms the Commissioner's decision.

## II.    PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI asserting that he has been disabled since October 26, 2019, due to fibromyalgia, degenerative disc disease, peripheral neuropathy, back, neck, knee, and ankle problems, high blood pressure, plantar fasciitis, and carpal tunnel syndrome. Tr. 83-84, 96-97, 349. Plaintiff's applications were denied initially and again upon reconsideration. Tr. 202-204, 214-215, 217-218.

Plaintiff appealed the reconsideration of his DIB and SSI determinations and requested a hearing before an administrative law judge ("ALJ"). Tr. 207-208. The ALJ held a hearing in December 2021 and issued an unfavorable decision to Plaintiff. Tr. 18-30, 47-82. The Appeals Council denied Plaintiff's request for review. Tr. 3-8. As a result, the ALJ's decision became the final decision of the Commissioner subject to judicial review. *See* 42 U.S.C. § 405(g). Plaintiff now seeks review by this Court.

2

## III.   RELEVANT MEDICAL RECORDS

### A. 2018

In January 2018 an MRI was ordered by Cathy O'Donovan, MD for Plaintiff's cervical spine in response to his complaints of neck pain and deceased range of motion. Tr. 418. The imaging showed degenerative and spondylotic changes with facet arthropathy and uncinate process spurring. Tr. 419. These changes were noted to cause moderate bilateral foraminal stenosis at C4-5 and moderate left sided foraminal stenosis at C5-6. Tr. 419. Foraminal stenosis was noted as appearing similar to the prior exam and no central stenosis was observed. Tr. 419. The appearance of Plaintiff's cervical spine overall appeared to be stable compared to a prior exam. Tr. 419.

Imaging of Plaintiff's lumbar spine showed early degenerative disc changes at L3-4, L4-5, and L5-S1. Tr. 422. The purpose of this MRI was to address Plaintiff's complaints of back pain and neuropathy. Tr. 421. No focal protrusion and central or foraminal stenosis were noted. Tr. 422. Mild facet arthropathy was present but overall appearance of Plaintiff's lumbar spine did not appear changed in any significant way compared to a prior exam. Tr. 422. Imaging of Plaintiff's right knee in response to complaints of pain showed a small meniscal tear. Tr. 424-425.

Several months later in July 2018, Plaintiff visited with Dr. Donovan to address his complaints of pain in his knee, neck, shoulder and back in addition to neuropathy idiopathic peripheral, degenerative disc disease of his lumbar spine, and fibromyalgia. Tr. 460. As a result of this visit, Plaintiff was prescribed cyclobenzaprine and other pain medications, including gabapentin and oxycodone, were refilled. Tr.460- 466. Plaintiff had a follow up

visit with Dr. Donovan in October 2018. Tr. 542. At this visit Plaintiff was reminded to use his cane and was referred back to pain management to address his reported pain. Tr. 548. Medications for his pain were also refilled. Tr. 548.

**B. 2019**

In April 2019, Plaintiff visited with Dr. Donovan for his reported neck, back, and feet pain. Tr. 436, 438. Plaintiff's pain medications, including gabapentin and oxycodone, were refiled. Tr. 436-445.

In July 2019, imaging of Plaintiff's left foot showed underlying osteoarthritic changes and Achilles enthesopathy. Tr. 500. In this same month, imaging of Plaintiff's left foot also showed diffuse osteoarthritic changes and abnormal findings with the anterior aspect of the tibia in keeping with fairly large area of osteochondral defect. Tr. 591. Pain medications were continued. Tr. 517-523.

In August 2019, a CT angiogram of the abdominal aorta with runoff to bilateral lower extremities showed no evidence for hemodynamically significant stenosis but did show mild bilateral diffuse soft and calcific plaque formation. Tr. 583.

Plaintiff had a follow up visit with Dr. Donovan in October 2019 (before the alleged disability onset date) for complaints of pain. Tr. 510. Pain medications were continued. Tr. 510-516. The record also showed Plaintiff's body mass index of 33.5. Tr. 512.

**C. 2020**

After Plaintiff's alleged disability onset date of October 26, 2019, he established care with Jason D. Huikko, MD in January 2020. Tr. 577. Plaintiff reported to Dr. Huikko a history of chronic pain, although he reported that his chronic pain issues were stable at

that time, and he that had treated his pain issues with gabapentin, oxycodone, and ibuprofen. Tr. 577. He also reported a history of back pain, neuropathy, and fibromyalgia. Tr. 577. Dr. Huikko did not start Plaintiff on any pain medications following this visit. Tr. 578.

At a follow up visit with Dr. Huikko in March 2020, Plaintiff reported that he wished to switch his pain management to Dr. Huikko's clinic and that a provider he was seeing prescribed him oxycodone for his pain. Tr. 568. He informed Dr. Huikko that his pain medications were last filled on November 30, 2019, but he had "been managing fairly well" without his pain medications but was "still limited due to the pain." Tr. 568. Dr. Huikko prescribed Plaintiff tramadol as needed for his pain. Tr. 569. Dr. Huikko found that Plaintiff's range of motion in his lower back was limited due to pain and found tender palpation in the lower lumbar region. Tr. 569. Normal muscle strength and coordination were noted. Tr. 569. The record also reflected Plaintiff's body mass index of 32.74. Tr. 569. At another follow up appointment with Dr. Huikko in September 2020, Plaintiff reported that his pain had increased since he had run out of tramadol and that with gabapentin and tramadol his pain was "reasonably well managed." Tr. 635.

Dr. Donovan completed a physical assessment statement in September 2020. Tr. 678-679. She noted Plaintiff's diagnosis of thoracic back pain, lumbar disc degeneration, fibromyalgia, and knee pain. Tr. 678. The assessment provided that Plaintiff could sit for four hours and stand/walk for two hours in an eight-hour workday, would need five-to-fifteen-minute breaks during the workday, and would need to be absent from work for more than four times a month. Tr. 678-679. The assessment also provided that Plaintiff could

occasionally lift at most ten pounds, could use his hands and fingers for 20 percent of an eight-hour workday, and could use his arms for 10 percent of an eight-hour workday. Tr. 678-679.

At a follow up visit in November 2020, Dr. Huikko noted that in March 2020 he had switched Plaintiff's pain medication from oxycodone to tramadol. Tr. 632. Plaintiff reported his pain was "reasonably well managed" with gabapentin and tramadol. Tr. 632. He reported, however, increased pain in his right shoulder. Tr. 632. Dr. Huikko noted that Plaintiff's range of motion of his right shoulder was mildly limited because of pain and there was some generalized tenderness to palpation but no swelling or deformity. Tr. 633. Muscle strength and coordination were both noted as normal. Tr. 633. Plaintiff received a steroid injection to his right shoulder to address his shoulder pain. Tr. 633.

Lastly, in late 2020, state agency medical consultants reviewed Plaintiff's medical records and opined that Plaintiff was capable of a range of light work. Tr. 83-95, 96-108, 113-129, 130-146. They also opined that Plaintiff could stand/walk for about six hours in an eight-hour workday, could sit for about six hours in an eight-hour workday, lift and carry 20 pounds occasionally and ten pounds frequently, and occasionally climb ladders, ropes, or scaffolds. Tr. 83-95, 96-108, 113-129, 130-146.

**D. 2021**

In January 2021, Plaintiff had a remote visit with Dr. Donovan for the purpose of having Dr. Donovan issue a letter in support of his disability claim. Tr. 650. At the telehealth visit, Plaintiff reported increased shoulder, back, and neck pain as well as numbness in his feet and or left leg. Tr. 650. As a result of this telehealth visit, Dr. Donovan

6

identified four problems and made the following impressions. Tr. 655. Plaintiff's neuropathy idiopathic peripheral causes numbness which prevents Plaintiff from keyboarding or using a mouse for more than 30 minutes every three to four hours. Tr. 655. Plaintiff's venous stasis limits his ability to stand and sit. Tr. 655. Plaintiff's degenerative disc disease of the lumbar spine makes it so he cannot sit for more than five to ten minutes, and he can only walk for ten to fifteen minutes. Tr. 655. Lastly, Plaintiff's pain medications, gabapentin and tramadol, cause fatigue. Tr. 655.

Dr. Donovan issued her letter on January 13, 2021. Tr. 718. In her letter, Dr. Donovan opined that Plaintiff's medical problems make it impossible for him to work. Tr. 718. She explained that Plaintiff's main problem is idiopathic peripheral neuropathy which affects his feet, legs, arms, and hands. Tr. 718. The numbness in Plaintiff's hands, she opined, keeps Plaintiff from keyboarding or using a mouse for more than 30 minutes every three to four hours. Tr. 718. Dr. Donovan further opined that because of his degenerative disc disease of the lumbar spine, Plaintiff cannot sit for more than five to ten minutes and can only walk for ten to fifteen minutes before needing to sit or lie down. Tr. 718. Dr. Donovan explained that gabapentin and tramadol both cause fatigue and decreased concentration in Plaintiff. Tr. 718. Dr. Donovan noted that Plaintiff has venous stasis with edema which affects Plaintiff's ability to stand. Tr. 718. Dr. Donovan also opined that Plaintiff's neck and back pain, and fibromyalgia also complicates his ability to keep a job. Tr. 718. For example, according to Dr. Donovan, Plaintiff needs to be absent from work at least once a week, is not able to lift more than ten pounds on an occasional basis, is not

able to do any repetitive motions, lacks fine motor control of his hands, and is at a significant fall risk. Tr. 718.

Also in January 2021, imaging of Plaintiff's lumbar spine showed early disc degeneration at the L3-L4 level, with no focal disc protrusion or extrusion. Tr. 656-657, 674. The imaging did not show any signs of a compression fracture and there were no acute bone changes. Tr. 674. The imaging also did not show evidence of encroachment on the neural elements, neural foraminal stenosis or significant narrowing, and no discrete etiology. Tr. 674.

At a follow up appointment with Dr. Huikko in February 2021, Plaintiff reported problems with his right shoulder and bilateral hips but reported his back pain as "relatively stable." Tr. 670. Dr. Huikko found Plaintiff's range of motion of his right shoulder to be "mildly limited" because of pain but no swelling or deformity was present. Tr. 671. Plaintiff's range of motion of his bilateral hips as well as his muscle strength and coordination were noted as normal. Tr. 671. Imaging of Plaintiff's bilateral hips showed mild degenerative changes, but no other significant changes. Tr. 669, 671. Dr. Huikko continued Plaintiff on tramadol and gabapentin for his pain and administered another steroid injection for Plaintiff's reported shoulder pain. Tr. 671.

In May 2021, Dr. Huikko administered another steroid injection in Plaintiff's right shoulder. Tr. 665, 667. Plaintiff had received "some good relief from the last injection." Tr. 667. Imaging Plaintiff's shoulder from this visit showed "no acute abnormalities or significant osteoarthritis changes." Tr. 667. Plaintiff's back pain was noted as "relatively stable" and there was no weakness in the lower extremities. Tr. 665. Dr. Huikko again

continued Plaintiff on tramadol and gabapentin for his chronic pain. Tr. 667. Plaintiff's range of motion of his lower back was noted as limited due to pain; however, range of motion of his right shoulder, muscle strength and coordination remained unchanged from the February visit. Tr. 666.

Imaging of Plaintiff's lumbar spine from October 2021 showed disc degeneration with associated proliferative changes at the L3-L4 level, and mild diffuse degenerative facet arthropathy. Tr. 662, 711. The results showed no other significant findings and no evidence of spinal instability. Tr. 662, 711. In November 2021, imaging of Plaintiff's cervical spine showed no focal disc protrusion or extrusion but did show multilevel neural foraminal narrowing, neural foraminal stenosis at the C5-C6 level bilaterally with impingement on the exiting C6 nerve roots. Tr. 693-694, 703. Imaging of Plaintiff's lumbar spine showed an unchanged appearance of his lumbar spine and no evidence of focal disc protrusion or extrusion. Tr. 695-696. Also, in November, in a correspondence between Dr. Donovan and Plaintiff, Dr. Donovan told Plaintiff that he has some abnormalities that put pressure on the nerve roots in his cervical spine and noted that she "should send [him] to a neurosurgeon about this." Tr. 716. As of the date of the hearing before the ALJ on December 23, 2021, Plaintiff had not seen a neurosurgeon. Tr. 47, 69.

## IV.   ADMINISTRATIVE HEARING AND ALJ DECISION

At the hearing before the ALJ, Plaintiff testified that he has "been in so much pain" and experiences numbness in his hands and feet. Tr. 60-63, 67. He also testified that his hands and legs are shaky, he lacks dexterity in his hands, and has trouble twisting objects and buttoning his clothing. Tr. 60, 63, 70. He stated he experiences pain in his back, neck,

and feet which is worsened by odd positions, and activities such as crouching, lifting, reaching, or grabbing. Tr. 61. He further testified that he is able to lift ten pounds, can carry his groceries, and can stand and sit for approximately 20 minutes but is most comfortable while laying down. Tr. 62. He stated that gabapentin relieves his pain but causes brain fog and makes him lethargic. Tr. 64-65. Following the hearing, the ALJ issued her decision in March 2022. Tr. 18-30.

The ALJ found that Plaintiff satisfied the insured status requirements of the Social Security Act through December 31, 2022 and has not engaged in substantial gainful activity since the alleged disability onset date of October 26, 2019. Tr. 21. The ALJ further found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and obesity. Tr. 21. The ALJ also identified as non-severe Plaintiff's physical impairments of a right knee meniscus tear, idiopathic peripheral neuropathy, venous status with edema, and fibromyalgia. Tr. 21-22. The ALJ also found Plaintiff's mental impairments to be non-severe. Tr. 22-23. The ALJ then concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23-24.

With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff can perform less than a full range of light work as defined under 20 C.F.R. §§ 404.1567(b) and 416.967(b), including the residual functional capacity to:

> lift and/or carry twenty pounds occasionally and ten pounds frequently. He can stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour

workday. He can engage in unlimited push and pull except for the limitations in lifting and carrying. He can frequently climb ramps and stairs and can occasionally climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and can occasionally crawl. He can have occasional exposure to vibration. He can occasionally reach overhead with the right upper extremity and frequent reaching in all other directions.

Tr. 24-25. The ALJ, therefore, concluded that Plaintiff is capable of performing past relevant work as a casino host or as a security guard and that these types of positions do not require the performance of work-related activities that are precluded by Plaintiff's residual functional capacity. Tr. 28. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 29-30.

## V.     ANALYSIS

### A.  Legal Standards

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his age, education, and work

experience. 42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) []he was severely impaired; (3) h[is] impairment was, or was comparable to, a listed impairment; (4) []he could perform past relevant work; and if not, (5) whether []he could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant demonstrates that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough

12

that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted).  Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

Plaintiff asserts that the ALJ's residual functional capacity determination is not supported by substantial evidence because the ALJ mischaracterized the evidence, did not adequately develop the record, and failed to evaluate properly the opinions of Dr. Donovan. *See* Pl.'s Mem. in Supp. at 1, ECF No. 17. The Commissioner opposes Plaintiff's motion. *See generally* Def.'s Brief, ECF No. 20.

**B.  The ALJ Did Not Err in Determining Plaintiff's Residual Functional Capacity**

Plaintiff contends that the ALJ's residual functional capacity determination is unsupported by substantial evidence in the record because the ALJ mischaracterized the

evidence, failed to develop the record, and relied on her own lay interpretation of Plaintiff's medical records. *See* Pl.'s Mem. in Supp. at 11-17. Plaintiff argues that the ALJ failed to consider the effects of Plaintiff's cervical nerve root impingement (that imaging from November 2021 revealed) on his ability to perform reaching, handling, fingering, and feeling tasks. *Id.* at 16.

A claimant's "residual functional capacity is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1); *accord* 20 C.F.R. § 416.945(a)(1); *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's [residual functional capacity] represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence."); *see also Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022)."Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F.4th at 1360.

At the same time, the residual-functional-capacity determination "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *see Perks*, 687 F.3d at 1092; *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c). "An ALJ determines a claimant's [residual functional capacity] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted); *accord Schmitt*,

27 F.4th at 1360; *Noerper*, 964 F.3d at 744-45. As such, there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion." S*chmitt*, 27 F.4th at 1630 (quotation omitted). Nor is an ALJ "limited to considering medical evidence exclusively." *Id.* (quotation omitted). Accordingly, "[e]ven though the [residual-functional-capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F.4th at 1360; *see* 20 C.F.R. §§ 404.1546(c), 416.946(c). Plaintiff bears the burden to establish his residual functional capacity. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

The ALJ determined that Plaintiff has the residual functional capacity to perform less than a full range of light work as defined under 20 C.F.R. §§ 404.1567(b) and 416.967(b), including the residual functional capacity to:

> lift and/or carry twenty pounds occasionally and ten pounds frequently. He can stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. He can engage in unlimited push and pull except for the limitations in lifting and carrying. He can frequently climb ramps and stairs and can occasionally climb ladders, ropes, or scaffolds. He can frequently balance, stoop kneel, crouch, and can occasionally crawl. He can have occasional exposure to vibration. He can occasionally reach overhead with the right upper extremity and frequent reaching in all other directions.

Tr. 24-25. Plaintiff argues that this residual functional capacity determination is based on a mischaracterization of the medical evidence record, is not supported by "any competent medical opinion, and is nothing more than the lay ALJ's 'best guess' as to Plaintiff's ability to perform reaching and manipulative tasks in a competitive work environment." Pl.'s

Mem. in Supp. at 12. Plaintiff's main issue is with the ALJ's conclusion that Plaintiff's "cervical spine findings were the same prior to the alleged onset date through the period at issue." *See* Pl.'s Mem. in Supp. at 12; Tr. 27. According to Plaintiff, the record shows that Plaintiff's cervical spine worsened. *See* Pl.'s Mem. in Supp. at 12-13. Plaintiff points to the November 2021 imaging of Plaintiff's cervical spine which showed pressure on Plaintiff's C6 nerve roots. *See* Pl.'s Mem. in Supp. at 13; Tr. 693, 703. And Dr. Donovan indicated she should refer Plaintiff to a neurosurgeon. *Id.* at 13; Tr. 716. Plaintiff asserts that the ALJ failed to accurately consider and characterize the November 2021 imaging which negatively impacted the ALJ's residual functional capacity determination because the ALJ failed to include limitations for reaching, handling, fingering, and feeling. *Id.* at 16, 13. Plaintiff further argues his subjective complaints support more restrictive limitations. *Id.* at 14-16. Lastly, Plaintiff believes no medical opinions support the above residual functional capacity determination and that the ALJ should have contacted Dr. Donovan for an updated opinion or ordered a consultative examination with respect to the November 2021 imaging. *Id.* at 14-17.

First and foremost, in determining Plaintiff's residual functional capacity, the ALJ *did* consider the November 2021 imaging of Plaintiff's cervical spine and *did not* mischaracterize the findings from that imaging. The ALJ correctly noted that "imaging of the cervical spine show[ed] no focal disc protrusion of extrusion. There was multilevel neural foraminal narrowing and neural foraminal stenosis [] present at the C5-C6 level bilaterally with impingement upon the exiting C6 nerve roots." Tr. 27. This is consistent with the medical record. Tr. 693, 703. The ALJ acknowledged the imaging "more recently

16

shows so [sic] issues with impingement." Tr. 26. But the ALJ concluded that, "the imaging was not too dissimilar from prior imaging in 2018." Tr. 26. With respect to the 2018 imaging, the ALJ noted that "degenerative changes of [Plaintiff's] cervical spine [were] found, with degenerative and spondylotic changes with facet arthropathy and uncinate process spurring." Tr. 26. The ALJ also noted that "imaging at this time also showed moderate bilateral foraminal stenosis at C4-5 and moderate left sided foraminal stenosis at C5-6, foraminal stenosis and no central stenosis seen." Tr. 26. Because the ALJ found the 2018 imaging "not too dissimilar from prior imaging in 2018" she went on to conclude that "[t]he claimant's cervical spine findings were the same prior to the alleged onset date through the period at issue." Tr. 26-27. In short, the ALJ did not disregard or mischaracterize the November 2021 imaging of Plaintiff's cervical spine. *See, e.g.*, Tr. 26 (acknowledging that more recent imaging of Plaintiff's cervical spine "was not too dissimilar from prior imaging in 2018").

And, contrary to Plaintiff's assertions, the ALJ was not required to contact Dr. Donovan for an updated opinion or order a consultative examination because of the November 2021 imaging. "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "Although the ALJ has an obligation to develop the record, she need not 'seek additional clarifying statements from a treating physician unless a crucial issue is underdeveloped.'" *Dennis B. Saul*, Case No. 20-CV-515 (NEB/HB), 2021 WL 1138304, at *2 (D. Minn. Mar. 25, 2021) (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). The duty to develop the

record is satisfied when there is substantial evidence supporting the ALJ's decision. *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). *See also Twyford v. Commissioner, Social Security Administration*, 929 F.3d 512, 518 (8th Cir. 2019) ("[The Court] do[es] not require that every aspect of an [residual functional capacity] finding be supported by a specific medical opinion, only that it be supported by some medical evidence of the claimant's ability to function in the workplace." (quotations omitted)). The record as a whole demonstrates that substantial evidence supports the ALJ's residual functional capacity determination. The ALJ based Plaintiff's residual functional capacity on Plaintiff's subjective complaints, testimony, objective medical evidence records, and opinion evidence on the record. *See generally* Tr. 18-30.

The ALJ summarized medical records from before Plaintiff's alleged disability onset date to late 2021. For example, she discussed imaging of Plaintiff's right knee from 2018 showing a small meniscal tear. Tr. 21, 424-425. The ALJ considered 2019 imaging of Plaintiff's left foot showing underlying osteoarthritic changes and Achilles enthesopathy as well as 2021 imaging of Plaintiff's bilateral hips showing mild degenerative changes but no other significant changes. Tr. 21, 500, 669, 671. The ALJ also reviewed and noted the minimal number of medical records concerning Plaintiff's neuropathy idiopathic peripheral. Tr. 21-22, 421, 650, 655.

The ALJ also discussed Plaintiff's conversative treatment for his reported back and neck pain as well as Plaintiff's decreased pain due to his use of gabapentin and tramadol. Tr. 22, 26-28, 568-569, 577, 632, 635, 665, 667, 671. For example, beginning in early 2020, Plaintiff's pain was stable even though he had been without pain medications for a few months. Tr. 26, 568, 577. Likewise, at a follow up visit with Dr. Huikko in March 2020, Plaintiff reported that he had still been without regular pain medications and still had been "managing fairly well without the pain medication[s] but [was] still limited due to the pain." Tr. 26, 568. Dr. Huikko prescribed tramadol for Plaintiff's pain. Tr. 569. At follow up appointments with Dr. Huikko in September and November of 2020, Plaintiff reported that with gabapentin and tramadol his pain was "reasonably well managed." Tr. 26-27, 632, 635.

The ALJ also considered Plaintiff's reported pain in his right shoulder and his conversative treatment for that issue. Tr. 26. For example, in 2020 and 2021 Dr. Huikko administered steroid injections to Plaintiff's right shoulder to address his shoulder pain. Tr. 26, 633, 665, 667, 671. Plaintiff reported that he received "some good relief" from the injections. Tr. 667. Imaging of Plaintiff's shoulder showed "no acute abnormalities or significant osteoarthritis changes." Tr. 667. Plaintiff's range of motion of his right shoulder was mildly limited because of pain and some generalized tenderness to palpation was present but no swelling or deformity was found. Tr. 633, 671. Muscle strength and coordination were both shown as normal. Tr. 633, 671.

Imaging from 2018 of Plaintiff's lumbar spine was also discussed by the ALJ. Tr. 26. Such imaging showed early degenerative disc changes at L3-4, L4-5, and L5-S1. Tr.

26, 422. No focal protrusion and central or foraminal stenosis were noted with respect to the 2018 imaging. Tr. 422. Mild facet arthropathy was noted as present but the overall appearance of Plaintiff's lumbar spine did not appear changed in any significant way compared to a prior exam. Tr. 422. Imaging of Plaintiff's lumbar spine from 2021 was also considered by the ALJ. Tr. 22, 24, 26-27. *See, e.g.*, Tr. 674 (imaging of Plaintiff's lumbar spine showed "[n]o focal disc protrusion or extrusion. No compression fracture. No acute bone changes. Early disc degeneration at a L3/L4 level . . . no encroachment upon the neural elements and no evidence of neural foraminal stenosis or significant narrowing. No discrete etiology found in Plaintiff's symptoms."); Tr. 695-694 (imaging showed an unchanged appearance of Plaintiff's lumbar spine). As discussed more above, the ALJ also considered imaging of Plaintiff's cervical spine before and after the alleged disability onset date. Tr. 26-27, 418-419, 693, 703.

Medical opinions by Dr. Donovan and Caty Dom, M.D. on Plaintiff's medical records were discussed, both of which were found to be unpersuasive by the ALJ. Tr. 21-23, 27-28, 718. Opinions from state agency medical consultants were also considered and found to be persuasive by the ALJ. Tr. 27, 83-95, 96-108, 113-129, 130-146. The state medical consultants opined that Plaintiff was capable of a range of light work, including standing, walking, and sitting for about six hours in an eight-hour workday, Plaintiff was also found to be capable of lifting and carrying 20 pounds occasionally and ten pounds frequently, as well as occasionally climbing ladders, ropes, or scaffolds. Tr. 83-95, 96-108, 113-129, 130-146. Plaintiff's functional limitations were also thoroughly discussed by the ALJ, including the effects of Plaintiff's obesity. Tr. 24-27, 512, 569. And lastly, Plaintiff's

own subjective reports and testimony from the hearing before the ALJ were also considered. Tr. 25, 60-65, 67, 70.

All in all, the record reflects improvements from conversative treatment for Plaintiff's pain which included use of pain medications and steroid injections. The record also reflects mild decrease in range of motion yet normal muscle strength and coordination, and the same and or similar imaging of Plaintiff's lumbar and cervical spine.

The Court concludes that substantial evidence on the record as a whole supports the ALJ's conclusion that the objective medical evidence is consistent with the ALJ's residual functional capacity determination. It is not a basis for reversal if it were possible to reach a conclusion other than the one reached by the ALJ based on the objective medical evidence. *See Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) ("We may not reverse simply because we would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion."); *accord Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

### C. The ALJ Did Not Err in Finding Dr. Donovan's Opinions Unpersuasive

In January 2021, Dr. Donovan wrote a letter in support of Plaintiff's disability claim, offering the following opinions. Tr. 718. Dr. Donovan stated that Plaintiff's main problem is with idiopathic peripheral neuropathy which affects his feet, legs, arms, and hands. Tr. 718. Dr. Donovan opined that Plaintiff can only use a keyboard or mouse for no more than 30 minutes every three to four hours due to numbness in his hands. Tr. 718. She further opined that Plaintiff's degenerative disc disease of the lumbar spine and venous stasis with edema affects his ability to sit and stand. Tr. 718. Plaintiff cannot sit for more than five to

ten minutes and can walk for only ten to fifteen minutes. Tr. 718. With respect to Plaintiff's pain medications, Dr. Donovan opined that his medications cause fatigue and decreased concentration. Tr. 718. As for his neck and back pain and fibromyalgia, Dr. Donovan opined that Plaintiff would have to miss at least one day a week of work. Tr. 718. And, lastly, Dr. Donovan opined that Plaintiff cannot lift more than ten pounds on an occasional basis, lacks the ability to do repetitive motions, lacks fine motor control of his hands, and is at a significant fall risk. Tr. 718. The ALJ found Dr. Donovan's opinions unpersuasive because those opinions were not consistent with the record and unsupported. Tr. 28. Plaintiff contends that the ALJ's residual functional capacity determination is unsupported by substantial evidence because the ALJ did not properly evaluate Dr. Donovan's opinions. *See* Pl.'s Mem. in Supp. at 17-22.

In evaluating the persuasiveness of medical opinions, an ALJ must consider "(1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). "The first two factors—supportability[2] and consistency[3]—are the most important." *Id.* (citing § 404.1520c(a)). But

---

[2] The regulations define the factor of "supportability" as follows:

> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1).

[3] The regulations define the factor of "consistency" as follows:

"[n]o talismanic language is required for the ALJ to meet the requirements of § 404.1520c, only that the ALJ make it clear that they considered the supportability and consistency of an opinion." *Mario O. v. Kijakazi*, No. 21-CV-2469 (NEB/ECW), 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022), report and recommendation adopted, 2023 WL 136590 (D. Minn. Jan. 9, 2023).

The ALJ found Dr. Donovan's opinions to be unpersuasive because her opinions "are inconsistent with the record and unsupported." Tr. 28. According to the ALJ, Dr. Donovan's opinions in the January 2021 letter "are out of proportion with the medical evidence record." Tr. 28. In coming to this conclusion, the ALJ relied on a number of objective medical findings in the record documenting Plaintiff's conversative treatment, improved symptoms, and relatively unchanged imaging. Tr. 26-28. The Court concludes that the ALJ did not err in her analysis of Dr. Donovan's opinions.

Plaintiff argues that the November 2021 imaging of Plaintiff's cervical spine (which was conducted *after* Dr. Donovan's January 2021 letter in support of Plaintiff's disability claim) supports Dr. Donovan's opinions. *See* Pl.'s Mem. in Supp. at 18-19. Dr. Donovan's January 2021 opinions, however, lack any mention of Plaintiff's cervical spine, besides a brief statement that Plaintiff has "chronic neck pain." Tr. 718. Contrary to Plaintiff's assertions and as discussed more thoroughly above, the ALJ *did* consider and properly

---

The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(2).

characterize the imaging of Plaintiff's cervical spine prior to the alleged disability onset date through the period at issue. Tr. 26-27.

Next, Plaintiff argues that Dr. Donovan's treatment notes support Dr. Donovan's opinions. *Id.* at 19-20. A comparison of Dr. Donovan's treatment notes demonstrates that her January 2021 opinions are not supported by her own treatment notes. *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."). For example, Dr. Donovan's treatment notes briefly mention Plaintiff's neuropathy, but a significant mention of neuropathy is lacking. Tr. 422, 460-466, 510-516. It does not follow, as Dr. Donovan opined in January 2021, that Plaintiff's "main problem is idiopathic peripheral neuropathy which affects not only his feet and legs, but his arms and hands." Tr. 28, 718. Plaintiff's medical records, including Dr. Donovan's own treatment notes, fail to support this opinion.

Plaintiff also takes issue with the lack of the use of the word "supportability" by the ALJ in her analysis. *See* Pl.'s Mem. in Supp. at 20. This argument is not persuasive. "The fact that the ALJ did not use the words 'supportability' and 'consistency' is not determinative; word choice alone does not warrant reversal." *Atwood v. Kijakazi*, No. 4:20-CV-1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) (citing *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013)).

Lastly, Plaintiff argues that the ALJ failed to provide an explanation as to the consistency factor. Tr. 20-21. The ALJ "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more

thorough medical evidence." *Fentress*, 854 F.3d at 1020 (citations omitted). Here, the ALJ relied on other, substantial evidence in the record that was inconsistent with Dr. Donovan's opinions, including Plaintiff's conversative treatment, improved symptoms, and largely unchanged imaging. *See, e.g.*, Tr. 422, 662, 656-657, 674, 695 (noting degenerative changes of Plaintiff's lumbar spine but no significant changes and no focal disc protrusion or extrusion); Tr. 693, 703 (noting most recent imaging of Plaintiff's cervical spine showed issues with impingement but no focal disc protrusion or extrusion); Tr. 665, 670-671 (noting complaints of shoulder pain were addressed with steroid injections); Tr. 510-516, 632-633, 635, (noting controlled pain after minimal treatment with tramadol and gabapentin); Tr. 568, 577 (noting pain was stable even without pain medications); Tr. 632-633 (noting normal muscle strength and coordination); Tr. 665-667 (noting mild limits to Plaintiff's range of motion); Tr. 512, 569 (noting Plaintiff's obesity); Tr. 83-95, 96-108, 113-129, 130-146 (noting state agency medical consultants opinions that Plaintiff was capable of a range of light work where he could lift and carry 20 pounds occasionally and ten pounds frequently).

Contrary to Plaintiff's argument, the above records (which the ALJ replied upon in rejecting Dr. Donovan's opinions, Tr. 24-28) do support the ALJ's conclusion that Dr. Donovan's opinions are not consistent with the record. Tr. 28. For example, Dr. Donovan opined significant issues with idiopathic peripheral neuropathy, venous stasis with edema, fibromyalgia, and numbness, but, as shown above, other objective medical evidence is *significantly* lacking in that respect. While the Court sympathizes with Plaintiff's situation,

Dr. Donovan's opinions are certainly "out of proportion with the medical evidence record." Tr. 28.

Because the ALJ supported her findings with substantial evidence in the record, the ALJ was not required to adopt Dr. Donovan's opinions. *See Seth K. v. Kijakazi*, No. 21-cv-76 (MJD/LIB), 2022 WL 3718601, at *5 (D. Minn. July 27, 2022) ("[T]he ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces her otherwise."), report and recommendation adopted, 2022 WL 3717043 (D. Minn. Aug. 29, 2022). In sum, the ALJ gave "good reasons," supported by substantial evidence in the record, to explain why Dr. Donovan's opinions were not persuasive. *See Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). Accordingly, the ALJ did not err in rejecting Dr. Donovan's opinions.

Moreover, it is not the role of the Court to reweigh the evidence presented to the ALJ. *See Schmitt*, 27 F.4th at 1361 ("Despite [the claimant's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence."). "While it is not surprising that, in an administrative record which exceeds 1,500 pages, [Plaintiff] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's [residual functional capacity] determination and the decision to discount [Dr. Donovan's] opinion[s]." *See Fentress*, 854 F.3d at 1021 (citing *Igo*, 839 F.3d at 731). The Court will not reverse the ALJ's decision "simply because [it] would have reached a different conclusion than the Commissioner or because substantial evidence supports a contrary conclusion." *Id.* (citations omitted); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.

2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision."). Here, the ALJ's determination is supported by good reasons and substantial evidence, and the Court therefore finds that the ALJ did not err in assessing Dr. Donovan's opinions.

In sum, based on the Court's review of the record as a whole, the Court finds that the ALJ's decision that Plaintiff was not disabled is supported by substantial evidence in the record. Because there is substantial evidence to support the ALJ's decision, the Court may not reverse the decision merely because substantial evidence may exist which would have supported a different outcome, or because the Court could have decided the case differently.

[Continued on next page.]

## VI.   CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons states above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgement, ECF No. 16, is **DENIED**.

2. Defendant's request for relief, ECF No. 20, is **GRANTED**.

3. The Commissioner's decision is **AFFIRMED.**

4. This matter is **DISMISSED.**

LET JUDGMENT BE ENTERED ACCORDINGLY.


Date: March 15, 2024                          *s/ Tong N. Leung*
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              District of Minnesota

                                              *Jeremy T. S. v. O'Malley*,
                                              Case No. 23-cv-202 (TNL)